1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   CRAIG SPURLOCK,                          CASE NO. 2:23-cv-00467-JHC

9                        Plaintiff,          ORDER

10          v.

11  STATE FARM FIRE AND CASUALTY
    COMPANY,
12

13                       Defendant.

14

15
16

**I**

**INTRODUCTION**

17

18          This matter comes before the Court on the parties' cross motions for summary judgment.

19  Dkt. ## 53, 57.  Plaintiff Craig Spurlock submitted a claim under his homeowners insurance

20  policy (the Policy) after water backed up into the crawl space under his house.  Dkt. # 54 at 177.

21  The insurer, Defendant State Farm Fire and Casualty Company, denied the claim.  *Id.* at 278.

22  Spurlock sued State Farm, claiming breach of contract, bad faith, violation of Washington's

23  Consumer Protection Act (CPA), RCW § 19.86.010, *et seq.*, and violation of the Insurance Fair

24  Conduct Act (IFCA), RCW § 48.30.015.  Dkt. # 1.

The Court GRANTS in part and DENIES in part Spurlock's motion for partial summary judgment.  The Court DENIES State Farm's motion for summary judgment.

## II

### BACKGROUND

A.    Insurance coverage denial

Spurlock had a homeowners insurance policy with State Farm, which included a Back-up of Sewer or Drain (BUSD) endorsement.  Dkt. # 54 at 5–56.  On March 4, 2022, Spurlock submitted a claim to State Farm because of water in the crawl space under his house.  *Id.*  at 17.  According to the claim file, Spurlock told State Farm: "Crawl [space] had water. Sump pump used but could not keep up from volume of flow. . . . Rain water may have come in through the system.  When furnace kicks on, you can hear gurgling."  *Id.* at 177.  Spurlock reported that water got into the furnace and the vents.  *Id.*  at 176.  State Farm first assigned Amanda Nelson, a State Farm claims specialist, to the claim.  *Id.* at 62, 177.  In the claim file, Nelson noted that the loss was caused because the "[s]ump pump backed up[,] [m]ost likely due to rain in the area," and it "[a]ppears coverage applies under [the] BUSD endorsement."  *Id.*  at 176–77.  State Farm coordinated assignment of the claim to a contractor to perform mitigation work on Spurlock's home.  *Id.*  at 176.  State Farm received a quote for the mitigation work and approved it.  *Id.*

Spurlock told State Farm that his house lacked heat and that it was a particularly cold winter.  Dkt. # 64 at 9.  State Farm did not offer Spurlock coverage under the Policy's Additional Living Expenses (ALE) provision.  Dkt. # 54 at 234.  Nelson said that she did not "address additional living expense coverage" when she spoke with Spurlock about his claim because he said that his "home was habitable."  *Id.* at 234.  She then said, "I don't recall having a specific conversation about additional living expenses.  My question would have been, 'Is your home habitable? Yes or no?'"  *Id.* at 235.

State Farm then reassigned Spurlock's claim to James Trout, an independent claims adjuster who contracted with State Farm. *Id.* at 173. Trout contacted Spurlock on March 26, 2022, and asked him where the sump pump was located. *Id.* According to Trout's notes in the file, Spurlock "stated that the sump pump was located on the outside of the house." *Id.* Trout asked Spurlock to send photos of the sump pump, which Spurlock did. *Id.*

According to the claim file, after speaking with Trout, Spurlock called Nelson, who "explained that the claim was reassigned." *Id.* at 172. The case file says Spurlock said that the sump pump is located "in the foundation of the crawl space." *Id.*

Trout contacted the contractor who was working on the mitigation at Spurlock's home. *Id.* A note in the case file states that Trout contacted the contractor because he "was wanting to determine the cause of the damage, [the contractor] stated that it was a failed sump pump under the home." *Id.* The note states that the contractor "confirmed that the sump pump is located in [a] hole outside the entrance to the crawlspace." *Id.*

Mark Mullins, the State Farm agent who sold the Policy to Spurlock, sent the photos of Spurlock's sump pump to Trout. *Id.* at 171. According to the case file, Trout and Mullins "had a difference of opinion on a coverage determination." *Id.*; *see also id.* at 319–23 (photos provided). Trout testified in his deposition that from looking at the photos, he believed that the sump pump was located "[o]utside the interior of the home." *Id.* at 258.

Trout issued a payment to Spurlock for the mitigation costs. *Id.* at 169. On April 11, 2022, he sent Spurlock a letter denying the claim. *Id.* at 278. Trout testified at his deposition that he believed the cause of the loss was "the surface water from the rain that accumulated under the house." *Id.* at 266. He said that "the insured had said that it was more than likely due to a large amount of rainfall that had happened at the time of the loss. And with the sump pump being located outside of the interior of the house, once it came out of the sump pump, it would be

considered surface water, which accumulated under the house which would not be covered under the endorsement." *Id.* at 266–67.

The April 11 letter states, "Based on our investigation, it was determined the damages to your home were due to flood and water that did not enter the dwelling through a sewer or drain or overflowed from within the sump pump. Therefore, [BUSD] endorsement HO-2622.1 coverage was not triggered for this loss." *Id.* at 278.

Spurlock said in his deposition that he knew that State Farm denied the coverage based on the location of the sump pump because, "after some investigation with [Mullins] . . . [he] explained to me that they said the sump pump wasn't directly underneath the walls of my house. It's in the crawl space, but it wasn't underneath immediate walls of the house." Dkt. # 64 at 8.

B.    Insurance Policy

The Policy provides that State Farm "will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I-LOSSES NOT INSURED** or otherwise excluded or limited in this policy." Dkt. # 54 at 26 (emphasis in original). The Policy excludes "any loss that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises,* arises from natural or external forces, or occurs as a result of any combination of these . . . . c. Water." Dkt. # 54 at 29–30 (emphasis in original). "Water" is defined as:

> (1) flood;
> (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;
> (3) waves (including tidal wave, tsunami, and seiche);
> (4) tides or tidal water;
> (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood contra device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure,** sidewalk, driveway, swimming pool, or other structure;

(9) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time."

*Id.* at 30 (emphasis in original).  The BUSD endorsement says:

> **We** will pay for accidental direct physical loss to the **dwelling** and covered personal property located within the **dwelling**, caused by back-up of water or sewage, subject to the following:
>
> a. The back-up must be directly and immediately caused solely by water or sewage:
>
>> (1) from outside the **residence premises** plumbing system that enters through a sewer or drain located inside the interior of the **dwelling**; or
>> (2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the **dwelling** designed to remove subsurface water drained from the foundation area.

*Id.* at 9 (emphasis in original).  The Policy defines "dwelling" as "the **building structure** on the **residence premises** used as the primary private residence and includes structures attached to the **dwelling**."  Dkt. # 54 at 15 (emphasis in original).  The Policy defines "building structure" as "a structure fully enclosed with permanent walls and a roof.  A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material."  *Id.* at 14–15.  A "building structure" includes:

> a. the foundation supporting the structure, including:
>
>> (1) slabs;
>>
>> (2) basement walls;
>>
>> (3) crawl space walls;
>>
>> (4) footings; and

1
2

(5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material.

3

*Id.* at 15.

4

The parties cross move for summary judgment.  Spurlock moves for partial summary

5

judgment, arguing that State Farm breached the insurance contract when it denied his claim,

6

breached its duty of good faith, and violated the CPA and IFCA.  Dkt. # 53 at 1.  He also moves

7

for summary judgment dismissal of State Farm's affirmative defenses.  *Id.*  State Farm moves for

8

summary judgment, arguing that it did not breach the insurance contract.  Dkt. # 57 at 1.  State

9

Farm also argues that the breach of contract, bad faith, CPA, and IFCA claims fail, saying that it

10

did not unreasonably deny coverage.  *Id.* at 7–8.

11

### III

### DISCUSSION

12

A.    Summary Judgment Standards

13

Summary judgment is warranted if the movant shows that there is no genuine dispute of

14

any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

15

56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party

16

fails to make an adequate showing on an essential element of a claim on which the nonmoving

17

party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no

18

genuine issue of fact for trial when the record, taken as a whole, could not lead a rational trier of

19

fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

20

U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not

21

simply "some metaphysical doubt"); Fed. R. Civ. P. 56(e).  Underlying facts are viewed in the

22

light most favorable to the non-moving party.  *Matsushita*, 475 U.S. at 587.

23
24

1

2

B.    Spurlock's Motion for Partial Summary Judgment

Spurlock moves for partial summary judgment.  Dkt. # 53.  Spurlock asks the Court to

determine that State Farm (1) breached the insurance contract when it denied his claim, (2)

breached its duty of good faith, (3) violated the CPA, and (4) and violated IFCA.  *Id.* at 1.

Spurlock asks the Court to reserve the question of proximate cause and damages for the jury.  *Id.*

Spurlock also moves for summary judgment dismissal of State Farm's affirmative defenses.  *Id.*

at 25.

1.    Breach of contract

Spurlock says that "State Farm's denial of coverage without actually determining the

cause of the loss breached" the insurance contract.  Dkt. # 53 at 14.  State Farm does not address

this argument in its response to Spurlock's motion but does discuss it in its reply in defense of its

own motion for summary judgment.  See Dkt. ## 61, 73.  It says, "Causation has never been the

issue and is not in dispute," and the BUSD endorsement is "[t]he only Policy language at issue."

Dkt. # 73 at 2, 6.  Indeed, neither party offers an alternative cause for the water back up, and

State Farm offers no other basis for its denial of the claim in its briefing in the cross motions.

*See* Dkt. ## 53, 57.  Both parties say that the backup was caused by water overflowing from

within the sump pump and sump pump well.  *See* Dkt. ## 73 (State Farm says that causation "has

never been in dispute or at issue regarding coverage," because Spurlock himself said that he

believed that heavy rain caused the sump pump to overflow and fill the crawl space), 65 ("[I]t is

undisputed that the damage to Mr. Spurlock's home was in fact caused by water that overflowed

from within his sump pump.").

Spurlock then says that State Farm's denial of coverage breached the insurance contract

because the sump pump was located "inside the interior of the dwelling," and is thus covered by

the Policy.[1]  Dkt. # 53 at 17.  State Farm counters that under the BUSP endorsement, the sump pump was located outside the house, so it was not covered under the policy.  Dkt. # 61 at 3.

> "Whether coverage exists is a two-step process.  The insured must prove that the policy covers [the] loss.  Thereafter, to avoid coverage, the insurer must prove that specific policy language excludes the insured's loss."  *Graff v. Allstate Ins. Co.*, 113 Wash. App. 799, 803, 54 P.3d 1266, 1268 (2002).  But courts ultimately determine whether the insurance company has breached the contract "by characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes."[2]  *Id.* (quoting *Bowers v. Farmers Ins. Exch.*, 99 Wash. App. 41, 44, 991 P.2d 734, 736 (2000)).

---

[1] Spurlock also says that State Farm cannot rely on the argument that it denied coverage based on the location of the sump pump because that justification was not included in the denial letter.  Dkt. # 53 at 15.  Under Washington law, insurers may not "introduce[] new or changed bases for denying insurance coverage once litigation has begun."  *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1235, 1245 (W.D. Wash. 2014).  The insured must show "prejudice or the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter."  *Id.* (quoting *Hayden v. Mutual of Enumclaw Ins. Co.*, 141 Wash.2d 55, 63, 1 P.3d 1167 (2000)).  Spurlock cannot show that he was prejudiced because he learned that State Farm denied his claim based on the location of the sump pump around the time of the denial.  *See* Dkt. # 64 at 8–9.  Further, whether State Farm's failure to include this reasoning in its denial of benefits letter is a breach of its duty of good faith is a question of fact for the jury.  Thus, the Court considers State Farm's argument that it denied the claim based on the location of the sump pump.

Spurlock advances another theory as to how State Farm breached its insurance contract.  He says that, because the Policy covers "all-risks," "State Farm's denial of coverage without actually determining the cause of the loss breached" the Policy.  Dkt. # 53 at 14.  Because this Order concludes that the sump pump is covered under BUSD endorsement, the Court does not consider Spurlock's argument.

[2] Spurlock says that the Court should apply the "efficient proximate cause rule" in this case.  "The efficient proximate cause rule applies only where two or more independent forces operate to cause the loss. 'When, however, the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application.'" *Kish v. Ins. Co. of N. Am.*, 125 Wash. 2d 164, 170, 883 P.2d 308, 311 (1994) (quoting *Chadwick v. Fire Ins. Exch.*, 17 Cal.App.4th 1112, 1117, 21 Cal.Rptr.2d 871 (1993)).  The efficient proximate cause rule "permit[s] coverage when an insured peril sets other excluded perils into motion which 'in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought.'" *Id.*  Here, the efficient proximate cause doctrine does not apply because neither party has pointed to any other potential cause of the water back-up.

1    As discussed above, the evidence shows, and the parties agree, that water overflowing

2    from within the sump pump or sump pump well caused the water intrusion at issue.  Thus, to

3    determine whether State Farm breached the insurance contract, the Court must interpret the terms

4    of the BUSD endorsement.

5        Courts "interpret insurance policy provisions as a matter of law."  *Am. Best Food, Inc. v.*

6    *Alea London, Ltd.*, 168 Wash. 2d 398, 404, 229 P.3d 693, 695 (2010).  "When interpreting an

7    insurance policy, [the court] give[s] the language its plain meaning, construing the policy as the

8    average person purchasing insurance would."  *Robbins v. Mason Cnty. Title Ins. Co.*, 195 Wash.

9    2d 618, 626, 462 P.3d 430, 434 (2020).  Courts interpret any ambiguity in the policy in favor of

10    the insured.  *Id.* at 626, 462 P.3d at 434–35.

11        The BUSD endorsement says that State Farm covers water back-up in a dwelling if the

12    loss is caused by water "that enters into and overflows from within a sump pump, sump pump

13    well, or any other system located *inside the interior of the **dwelling*** designed to remove

14    subsurface water drained from the foundation area."  Dkt. # 54 at 9 (emphasis added and bold

15    emphasis in original).  Thus, the question is whether Spurlock's sump pump was "located inside

16    the interior of the ***dwelling***" per the terms of the Policy.

17        The Policy defines "dwelling" as "the ***building structure*** on the ***residence premises*** used

18    as the primary private residence and includes structures attached to the ***dwelling***."  Dkt. # 54 at

19    15 (emphasis in original).  The Policy defines "building structure" as "a structure fully enclosed

20    with permanent walls and a roof."  *Id.* at 14–15.  A "building structure" includes "the foundation

21    supporting the structure, including . . . crawl space walls."  *Id.* at 15.

22        The definition of dwelling "includes structures attached to the dwelling."  *Id.*  The Policy

23    defines "building structure" but not "structure."  *Id.*  The Policy does not use the word

24    "structure" as a shorthand for "building structure"; it uses the terms in different contexts, which

indicates that "structure" is different from "building structure."  Webster's defines "structure" as "something constructed or built."  *Webster's Third New International Dictionary* 2267 (2002).

Spurlock's expert, Wes Snowden, described the area of the sump pump: "[T]he sump pump enclosure is a buck-out on the foundation wall for that pump to sit in.  The walls and the floor of the buck-out are concrete and physically tied back to the foundation.  This condition is clearly part of the foundation."  Dkt. # 70 at 5.  He said that the "buck-out" was part of the original foundation of the house.  *Id.* at 21.  The parties describe the "buck-out" as the "sump pump well."  *See* Dkt. # 57 at 2.  Snowdon further described the "buck-out" as "the original crawlspace access to the house."  Dkt. # 70 at 22.  State Farm does not dispute that the sump pump is in a "buck out"—or sump pump well— in the ground next to the house, which is attached to the walls of the foundation and allows entrance to the crawl space under the house.  *See* Dkt. # 57 at 3.  Further, it is clear from the photos and the expert's uncontested description that the "buck out" was constructed or built.  *See, e.g.*, Dkt. # 54 at 319–23.  Thus, the "buck out" where the sump pump is located is a structure attached to the dwelling.  Under the BUSD endorsement, the sump pump was located "inside the interior of the dwelling" because it was inside the "buck out," which is included in the definition of dwelling.  And if there is any ambiguity—which the Court does not see here—it must be interpreted in favor of Spurlock.  State Farm has not pointed to any other basis on which it could deny coverage.  Thus, State Farm breached its contract when it denied coverage.  The Court grants Spurlock's motion for summary judgment as to the breach of contract claim.

2.      Bad faith

Insurers owe a duty of good faith to the insured that arises from a fiduciary relationship between the parties.  *Tank v. State Farm Fire & Cas. Co.*, 105 Wash. 2d 381, 385–86, 715 P.2d 1133, 1136 (1986).  Because of the fiduciary duty, "an insurance company's duty of good faith

rises to an even higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests." *Id.* (emphasis in original).

A breach of an insurance contract is not automatically considered bad faith. *See Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 484, 78 P.3d 1274, 1277 (2003). Rather, "[t]o succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Id.; see also Anderson v. State Farm Mut. Ins. Co.*, 101 Wash. App. 323, 329–30, 2 P.3d 1029, 1033 (2000) ("An insurer acts in bad faith when it overemphasizes its own interests. The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case.").

But denial of coverage "without reasonable justification, constitutes bad faith." *Indus. Indem. Co. of the Nw. v. Kallevig*, 114 Wash. 2d 907, 917, 792 P.2d 520, 526 (1990). An insurer denies coverage "without reasonable justification when it denies coverage based upon suspicion and conjecture. In other words, an insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit." *Id*.

RCW § 48.30.010(2) empowers the Washington Insurance Commissioner to promulgate regulations defining unfair practices. Violations of these regulations amount to bad faith when the insured can show that the insurer acted in an unreasonable, frivolous, or unfounded way. *See Tank*, 105 Wash. 2d at 386, 715 P.2d at 1136 ("[T]he Insurance Commissioner, pursuant to legislative authority under RCW § 48.30.010, has promulgated regulations defining specific acts and practices which constitute a breach of an insurer's duty of good faith." (citing WAC 284–30–300 et seq.)); *see also Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 125 Wash. App. 602,

616, 105 P.3d 1012, 1019 (2005) (applying the "unreasonable, frivolous, or unfounded" standard in analyzing whether the insurer violated the insurance regulations in bad faith).

Generally, bad faith is a question of fact for the jury, but a court can resolve the question as a matter of law if reasonable minds could not differ on the issue. *Smith*, 150 Wash. 2d at 484, 78 P.3d at 1277. "If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith." *Id.* at 486, 78 P.3d at 1278.

Spurlock says that State Farm acted in bad faith in the way it handled and denied the claim. Dkt. # 53 at 20. He says that State Farm violated five regulations:

- WAC 284-30-330(1) ("Misrepresenting pertinent facts or insurance policy provisions.")

- WAC 284-30-330(4) ("Refusing to pay claims without conducting a reasonable investigation.")

- WAC 284-30-330(13) ("Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim.")

- WAC 284-30-350(1) ("No insurer shall fail to disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy.").

- WAC 284-30-380(1) ("The insurer must not deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to the specific provision, condition, or exclusion is included in the denial. The denial must be given to the claimant in writing and the claim file of the insurer must contain a copy of the denial.").

1    *Id.* Spurlock also says that State Farm acted in bad faith under common law standards by (1)

2    failing to investigate, (2) speculating about the cause of the loss, (3) misrepresenting the policy

3    language and concealing the wrongful denial, and (4) interpreting the photos in a light most

4    favorable to the insurer. *Id.* at 21–22. The Court considers each of Spurlock's bad faith

5    arguments in turn.

6                        a.      WAC 284-30-330(1) – Misrepresentation

7            Spurlock says that State Farm misrepresented the insurance policy provisions in its

8    coverage denial letter as prohibited by WAC 284-30-330(1). Dkt. # 53 at 20. He says that

9    "State Farm misrepresented the language of Mr. Spurlock [*sic*] policy when it denied him all

10   coverage on April 11, 2022." *Id.*

11           State Farm counters that Spurlock was "specifically advised in the April 11, 2022, denial

12   letter why coverage was denied." Dkt. # 61 at 9. While the letter includes a copy of the entire

13   BUSD endorsement, it does not say that coverage was denied because State Farm determined

14   that the sump pump was not located in the dwelling. Dkt. # 54 at 278. The letter denying

15   coverage says: "Based on our investigation, it was determined the damages to your home were

16   due to flood and water that did not enter the dwelling through a sewer or drain or overflowed

17   from within the sump pump. Therefore, endorsement HO-2622.1 coverage was not triggered for

18   this loss." *Id.* While the letter does not explain why State Farm denied coverage, Spurlock does

19   not point to any misrepresentation in the letter. Viewing the evidence in the light most favorable

20   to State Farm, based on the information presented, the Court cannot conclude as a matter of law

21   that the carrier made a misrepresentation in violation of the regulation. Thus, the Court denies

22   summary judgment on this claim.

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

        b.        WAC 284-30-330(4) – Investigation

Under WAC 284-30-330(4), "Refusing to pay claims without conducting a reasonable investigation" is an unfair trade practice.  Spurlock says that State Farm denied the claim "without conducting a reasonable investigation" because it did not determine the cause of the water intrusion in the crawl space.  Dkt. # 53 at 20.  Spurlock's insurance coverage expert said that State Farm's investigation did not meet industry standards because it never "conclusively determined exactly how the water backed up into the crawlspace and the living spaces in the dwelling."  Dkt. # 68 at 60.

State Farm responds that its investigation was reasonable because it focused on determining whether there was coverage under the BUSD endorsement.  Dkt. # 61 at 10.  State Farm interviewed Spurlock, requested information about the location of the sump pump, including pictures, and interviewed the mitigation contractor.  *Id.*  Based on this, State Farm says that its "investigation was reasonable, timely, adequate in scope, and not based on guesswork or speculation."  *Id.*  State Farm does not dispute that it did not take additional steps to conclusively determine the cause of the water intrusion.  *See* Dkt. # 73 at 7 (arguing that State Farm need not determine the exact cause).  Viewing the foregoing in the light most favorable to State Farm, the Court concludes that there is at least an issue of fact as to whether State Farm's failure to further investigate the cause of the water intrusion was unreasonable, frivolous, or unfounded.[3]  Thus, the Court denies summary judgment on the investigation claim.

---

[3] Spurlock's investigation claim appears to rest on shaky logic.  The only deficiency that Spurlock identifies in the investigation is that State Farm did not determine the cause of the water intrusion.  But both parties agree that the water came from the sump pump and Spurlock does not point to any evidence of another, different cause of the water intrusion.  *See Capelouto v. Valley Forge Ins. Co.*, 98 Wash. App. 7, 19, 990 P.2d 414, 420 (1999) (holding that insurer's decision to deny coverage without further investigation was not bad faith because the coverage decision would not have been changed through further investigation).  State Farm's coverage decision turned on its interpretation of the insurance policy, not a lack of evidence about the incident.  Spurlock has failed to put forward any evidence that State Farm acted unreasonably in its investigation of the claim.  *See Smith*, 150 Wash. 2d at 486, 78 P.3d at 1277 ("If

1
2

       c.      WAC 284-30-330(13) and WAC 284-30-380(1) – Failure to
                   provide a reasonable explanation for the denial of coverage

3

WAC 284-30-330(13) provides that "[f]ailing to promptly provide a reasonable

4

explanation of the basis in the insurance policy in relation to the facts or applicable law for

5

denial of a claim" is an unfair trade practice.  WAC 284-30-380(1) provides that "[t]he insurer

6

must not deny a claim on the grounds of a specific policy provision, condition, or exclusion

7

unless reference to the specific provision, condition, or exclusion is included in the denial."  The

8

denial must be in writing.  *Id.*

9

Spurlock says that State Farm "failed to reasonably explain its denial of coverage" and

10

"failed to cite any exclusion that applied to crawlspace damage in its denial letter," in violation

11

of WAC 284-30-330(13) and WAC 284-30-380(1).  Dkt. # 53 at 21.  He says, "the denial letter

12

critically failed to address the cause of the water damage" and "State Farm has offered no reason

13

for its failure to address the cause of the loss."  Dkt. # 65 at 8–9.  In a deposition, State Farm's

14

expert admitted that "[i]n the [denial] letter there is no specific language saying how the loss did

15

occur."  Dkt. # 54 at 156.

16

State Farm responds that the letter does contain a reasonable explanation for the denial of

17

coverage because it includes the full BUSD policy language.  Dkt. # 61 at 11.  Further, in his

18

deposition, Spurlock testified that Mullins, the insurance agent, told him that his claim was

19

denied based on the location of the sump pump.  Dkt. # 64 at 8.  It is undisputed that the denial

20

letter does not explain State Farm's reason for denying the claim.  Viewing the foregoing in a

21

the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come
forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof.").

22

     But in its motion for summary judgment, State Farm makes a bare bones argument that it did not

23

act in bad faith because its denial of the insurance claim was reasonable. Dkt. # 57 at 8.  Thus, because
State Farm does not challenge Spurlock's bad faith investigation argument, the Court cannot grant
summary judgment to State Farm on this claim.

24

light most favorable to State Farm, the Court concludes that there is an issue of fact as to whether the carrier's explanations for the denial of coverage rise to the level of unreasonable, frivolous, or unfounded.  Thus, the Court denies summary judgment on this claim.

        d.       WAC 284-30-350(1) – Failure to disclose all benefits of the Policy

Spurlock says that State Farm failed to disclose "all pertinent benefits, coverages or other provisions of [the] insurance policy" because State Farm did not inform Spurlock that his policy contained an ALE benefit, in violation of WAC 284-30-350(1). Dkt. # 53 at 21.  WAC 284-30-350(1) provides that "[n]o insurer shall fail to disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy."  State Farm responds that it did not fail to disclose the ALE benefit because "State Farm was never advised by Spurlock that his home was uninhabitable." Dkt. # 61 at 12.

The record of the case intake in the file shows that a State Farm employee answered "No" to the prompt: "Indicate: Has the caller indicated the named insured's home is uninhabitable or involves a total loss to a detached structure(s), based on the facts of loss or information they provided? If uncertain, ask the caller." Dkt. # 63 at 9.  Nelson, the original claims adjuster on the case, said that she did not "address additional living expense coverage" when she spoke with Spurlock about his claim because he said that his "home was habitable." Dkt. # 54 at 234.  She then said, "I don't recall having a specific conversation about additional living expenses.  My question would have been, 'Is your home habitable? Yes or no?'" *Id.* at 235.  But, in his deposition, Spurlock said that he "expressed that the heater didn't work" and "We had record lows that year.  I don't know what else to tell them.  If the heat's not working, I have no heating." Dkt. # 64 at 9.

The ALE provision of the Policy provides that "[w]hen a loss insured causes the residence premises to become uninhabitable, [State Farm] will pay the reasonable and necessary

increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months." Dkt. # 54 at 22. The Policy does not define "uninhabitable." The question is whether it was unreasonable, frivolous, or unfounded for State Farm to determine that Spurlock's home was habitable given the circumstances presented. Viewing the evidence in the light most favorable to State Farm, the Court determines that this is a question of fact. Thus, the Court denies summary judgment on this issue.

e.      Common law violations of good faith

Spurlock says that State Farm denied the claim in bad faith under Washington common law in various ways. Dkt. # 53 at 21; *Kallevig*, 114 Wash. 2d at 917, 792 P.2d at 526 (1990) ("An insurer does not have a reasonable basis for denying coverage and, therefore, acts without reasonable justification when it denies coverage based upon suspicion and conjecture. In other words, an insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit.").

Spurlock says that State Farm failed to investigate and denied the claim "based upon suspicion and conjecture" because it did not determine the cause of the loss and the adjuster speculated that the loss was caused by rainwater accumulating under the house. Dkt. # 53 at 22–23. For the reasons outlined above in Section III.B.2.b. and c, the Court denies summary judgment on these bases.

Spurlock also says that State Farm acted in bad faith by "misrepresenting the policy language and concealing its wrongful denial." *Id.* at 22. For the reasons outlined above in Section III.B.2.a., the Court denies summary judgment on this basis.

Finally, Spurlock says that State Farm acted in bad faith because it interpreted the photographs of the sump pump in a light most favorable to State Farm. *Id.* Essentially, Spurlock

says that State Farm put its own interests before Spurlock's in its assessment that the sump pump was not located within the dwelling. *See Anderson*, 101 Wash. App. at 329–30, 2 P.3d at 1033 ("An insurer acts in bad faith when it overemphasizes its own interests."). Whether State Farm's assessment of the photographs was an unreasonable, frivolous, or unfounded presents a question of fact. Thus, the Court denies summary judgment on this issue.

3.    CPA

To prevail on a CPA claim, the moving party must show: "(1) [an] unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778, 719 P.2d 531, 533 (1986). Violations of Washington's insurance regulations promulgated under RCW 48.30.010, including WAC 284–30–330, WAC 284–30–350, and WAC 284-30-380, are "per se unfair trade practice[s]" under the CPA. *Anderson*, 101 Wash. App. at 332, 2 P.3d at 1035; *see also Kallevig,* 114 Wash. 2d at 921, 792 P.2d at 529 ("A violation of WAC 284–30–330 constitutes . . . a per se unfair trade practice."). In addition, a "breach of an insurer's duty of good faith constitutes a per se CPA violation." *Tank*, 105 Wash. 2d at 394, 715 P.2d at 1140.

Spurlock says that State Farm's alleged bad faith outlined in Section III.B.2 also breaches the CPA. Because Spurlock's bad faith claims present issues of material fact, the Court denies summary judgment on Spurlock's CPA claim.

4.    IFCA

Under the IFCA, "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW § 48.30.015(1). To

succeed on an IFCA claim, the insured must show that the insurer *unreasonably* denied a claim or benefit of the insurance contract. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wash. 2d 669, 680, 389 P.3d 476, 413 (2017). A denial is not unreasonable simply because the Court determines that the insurer's interpretation of a contract was incorrect. *See Wright v. Safeco Ins. Co. of Am.*, 124 Wash. App. 263, 279, 109 P.3d 1, 10 (2004) ("The test for bad faith denial of coverage is not whether the insurer's interpretation is correct, but whether the insurer's conduct was reasonable."); *Beasley v. GEICO Gen. Ins. Co.*, 23 Wash. App. 2d 641, 668, 517 P.3d 500, 517 (2022) (noting that there is overlap between IFCA and bad faith claims); *see also Merrill v. Crown Life Ins. Co.*, 22 F. Supp. 3d 1137, 1148 (E.D. Wash. 2014) (denying summary judgment for the IFCA claim even though the court determined that the insurer breached the unambiguous terms of the contract because whether the denial was unreasonable was a question of fact).

Spurlock says that there is no genuine dispute of fact that State Farm unreasonably denied coverage. Dkt. # 53 at 24. State Farm says that its denial of coverage was "based on a reasonable interpretation of the Policy." Dkt. # 61 at 8. Dkt. # 59 at 15.

Although the Court has determined that Spurlock's claim is covered under the Policy, State Farm has shown that reasonable minds could differ as to whether its denial of coverage was unreasonable under the circumstances. *See* Dkt. # 59 at 15 (Spurlock's insurance coverage expert noting that State Farm's denial of coverage "could be a reasonable construction of the policy"). Viewing the facts in the light most favorable to State Farm, whether State Farm acted reasonably in denying the claim presents a question of fact for the jury. Thus, the Court denies summary judgment as to the IFCA claim.

5.      Affirmative defenses

In its answer, State Farm raises 22 affirmative defenses. Dkt. # 7 at 9–10. Spurlock moves for summary judgment on these.[4] Dkt. # 53 at 25. He says that State Farm has failed to sufficiently support the essential elements of its affirmative defenses. *Id.* at 25–26. In its response, State Farm withdraws affirmative defenses 1–4, 9, 18–22. Dkt. # 61 at 13. State Farm's remaining affirmative defenses are: (5) "Failure to mitigate damages;" (6) "Contributory negligence;" (7) "Plaintiff's damages, in whole or in part, may have been caused by his own acts and omissions or his failure to comply with the Policy's terms;" (8) "Assumption of risk;" (10) "Plaintiff's damages, in whole or in part, may have resulted from pre-existing or intervening conditions or events, and any recovery should be reduced accordingly;" (11) "Fraud;" (12) "Misrepresentation;" (13) "To the extent that plaintiff has intentionally concealed or misrepresented any material fact or circumstance relating to the subject Water Loss, the Policy is void and plaintiff is not entitled to recover any damages;" (14) "Illegality;" (15) "Plaintiff's subject Water Loss, in whole or in part, is not a covered peril under the Policy;" (16) "Plaintiffs' coverage under the Policy excludes diminution of value of the subject Property unrelated to the Water Loss and any award should be reduced accordingly;" and (17) "Payment." Dkt. # 57 at 10–11. The Court considers each of State Farm's arguments in turn.

a.      Failure to mitigate damages and related defenses

State Farm says that affirmative defenses (5), (6), (7), (8), and (10) all present questions of fact. In his deposition, Spurlock testified that he has not taken any other steps to repair the

---

[4] Although Spurlock says that it moves to strike State Farm's affirmative defenses, he cites the summary judgment standard, and the motion does not meet the timing requirements for a motion to strike under Rule 12(f). *See Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 565 (S.D. Cal. 2012) (noting that a motion to strike must be brought within 21 days of the defendant filing its answer). Thus, the Court construes this motion as a motion for summary judgment on the affirmative defenses.

damage to his home after the water intrusion in March 2022.  Dkt. # 59 at 23.   He testified that his house "sits exactly the same way it did when [State Farm] denied the claim.  Nothing's been done since."  *Id.*  State Farm says that this "evidence goes directly to State Farm's affirmative defenses concerning Spurlock's failure to properly care for his residence in the wake of the water damage in 2022."  Dkt. # 61 at 16.  Spurlock testified that he did not conduct additional work or get an estimate on the cost to fix the water damage because contractors would charge him to assess the damage, and he could not afford to pay the amount.  Dkt. # 64 at 12.  This evidence, viewed in a light most favorable to State Farm, demonstrates material questions of fact as to whether Spurlock failed to mitigate his damages by repairing the water damage.  The evidence also shows that there are a material questions of fact as to whether Spurlock's failure to repair the water damage shows that: Spurlock was contributorily negligent for any damages; Spurlock's "acts and omissions or his failure to comply with the Policy's terms" caused the damages; that Spurlock assumed the risk by not addressing the water damages in his home, and that Spurlock's damages resulted in part from "intervening conditions or events."  Thus, the Court denies Spurlock's motion for summary judgment as to affirmative defenses (5), (6), (7), (8), and (10).

> b.     Misrepresentation and related defenses

State Farm says that affirmative defenses (11), (12), (13), and (14) all present questions of fact as to whether Spurlock misrepresented to State Farm that his sump pump was located within his dwelling.  Dkt. # 61 at 17.  As the Court discussed above, because the sump pump was located within the dwelling, as defined in the Policy, Spurlock did not misrepresent the location of the sump pump.  Thus, the Court grants Spurlock's motion for summary judgment on State Farm's affirmative defenses (11), (12), (13), and (14).

1

2            c.        Covered peril

State Farm says that, because Spurlock's claim was not covered by the Policy, the Court

3    should deny Spurlock's affirmative defense (15), which states, "Plaintiff's subject Water Loss, in

4    whole or in part, is not a covered peril under the Policy."  But because the Court determines that

5    Spurlock's claim was covered by the Policy, the Court grants Spurlock's motion for summary

6    judgment on affirmative defense (15).

7            d.        Diminution in value

8        State Farm says that there are questions of fact as to the amount of damages, thus

9    summary judgment as to State Farm's affirmative defense (16) on diminution of value is not

10    proper.  The Policy provides that the "loss does not include and [State Farm] will not pay for,

11    any ***diminution in value***."  Dkt. # 54 at 32 (emphasis in original).  State Farm says that Spurlock

12    seeks "numerous damages, including, but not limited to 'compensatory damages' and 'economic

13    and non-economic damages.'"  Dkt. # 61 at 18.  And Spurlock has asked that the question of

14    damages be reserved for the jury.  Because diminution of value goes to the question of damages,

15    the Court denies the motion as to this affirmative defense.

16            e.        Payment

17        State Farm says that its affirmative defense that it made payments to Spurlock, (17),

18    presents material issues of fact.  *Id.* at 19.  The Court agrees; State Farm has presented evidence

19    that it paid Spurlock $ 2,957.85 for mitigation work.  Dkt. # 54 at 284.  Moreover, this

20    affirmative defense goes to the damages issue, which Spurlock has requested be reserved for

21    trial.  Thus, the Court denies Spurlock's motion as to this defense.

22    C.    State Farm's Motion for Summary Judgment

23        State Farm says that, as a matter of law, it did not breach the insurance contract.

24    Dkt. # 57 at 1.  State Farm also says that the Court should dismiss the breach of contract, bad

faith, CPA, and IFCA claims because State Farm did not unreasonably deny coverage.  Dkt. # 57 at 1.

1.    Breach of contract

State Farm says that there is no breach of contract because it correctly determined that the claim was not covered.  *Id.* at 9.  It says that "Spurlock does not expressly cite to a provision of the Policy that it alleges State Farm breached."  *Id.*  But Spurlock points to the BUSD endorsement.  Dkt. # 69 at 12.  He says that "[t]here can be no material dispute that Mr. Spurlock's sump pump and the sump pump well that it sat inside were both located inside the walls of his home's foundation, and therefore squarely covered under State Farm's policy language requiring it to be 'located inside the interior of the ***dwelling*** designed to remove subsurface water drained from the foundation area.'"  *Id.* (emphasis in original).

As discussed *supra* Section III.B.1, the Court agrees.  State Farm breached the insurance contract by denying coverage based on the location of the sump pump.  Under the BUSD endorsement, the sump pump is located within the sump pump well, which is included in the definition of dwelling in the Policy.  Thus, the Court denies State Farm's motion for summary judgment on this issue.

2.    Bad faith, CPA, and IFCA

State Farm moves for summary judgment on Spurlock's bad faith, CPA, and IFCA claims because it says that its denial of coverage and interpretation of the insurance policy was reasonable.  Dkt. # 57 at 7.[5]  State Farm says that it originally granted coverage because it believed that the sump pump was located within the crawl space, and when it learned that the

---

[5] State Farm's motion does not address any of Spurlock's bad faith arguments in detail beyond a generalized argument that State Farm did not unreasonably deny coverage.  Dkt. # 57 at 6–7.  And State Farm discusses bad faith and IFCA together.  *Id.*  Thus, the Court considers only whether there is a material question of fact about whether State Farm unreasonably denied coverage.

sump pump was in the "buck-out," or sump pump well, the adjuster reasonably requested photos and talked to the mitigation contractor to understand where the sump pump was located. Dkt. # 61 at 5. State Farm also points to the depositions of Spurlock's coverage expert, Damian Arguello, who said State Farm's interpretation of the policy "could" be reasonable. Dkt. # 54 at 156. Considering this evidence and the evidence discussed above regarding these claims as raised in Spurlock's motion for summary judgment, all in the light most favorable to Spurlock, the Court concludes that there is a dispute of material fact as to whether State Farm's denial of coverage was unreasonable. The Court denies State Farm's motion for summary judgment as to the bad faith, CPA, and IFCA claims.

## IV
### CONCLUSION

For the above reasons, the Court GRANTS Spurlock's motion for summary judgment as to his breach of contract claim and affirmative defenses (11), (12), (13), (14), and (15). The Court DENIES Spurlock's motion as to his bad faith, CPA, IFCA, and remaining affirmative defenses. The Court DENIES State Farm's motion summary judgment.

Dated this 6th day of December, 2024.


John H. Chun
United States District Judge